IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 18-249** |
| **RICHARD CHASE HOOVER, et al.** | : | |

**ORDER**

      AND NOW, on this ____ day of _____, 2019, upon consideration of the Government's motion *in limine* to admit social media posts, and any response thereto, it is hereby ORDERED that the motion is GRANTED and the Court makes the following findings:

      1.      The government alleges that from at least March 2017 through June 2018, the defendants operated, and conspired to operate, a drug trafficking organization known as the Original Block Hustlers or "OBH" for the purpose of selling cocaine, crack, methamphetamine, and heroin. As part of the conspiracy, they imported drugs from the Los Angeles area and then sold those drugs from various locations they controlled, particularly in and around North Philadelphia.

      2.      At trial, the government intends to introduce evidence that the defendants used violence and threats of violence to control their territories, and those threats were often communicated through rap lyrics performed by defendant Abdul West and posted to social media. The defendants also documented their drug trafficking activities through social media posts.

      3.      The Court finds that the proffered social media evidence directly proves the charged offenses and that the social media posts facilitated the commission of the charged crimes. The evidence is therefore admissible as intrinsic to the charges in this case.

4. Additionally, the proffered evidence is admissible under Federal Rule of Evidence 404(b). The Court also finds that the government has offered a proper purpose for admission of the social media posts and has clearly articulated how the evidence fits into a chain of inferences, no link of which is the inference that the defendants have the propensity to commit the crimes charged.

5. The Court finds that the highly probative value of the proffered evidence is not substantially outweighed by any potential prejudicial impact, much less by any potential for unfair prejudice.

6. The Court will give a cautionary instruction to the jury on the proper use of this evidence.

**BY THE COURT:**

**HONORABLE MICHAEL BAYLSON**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 18-249** |
| **RICHARD CHASE HOOVER, et al.** | : | |

**GOVERNMENT'S MOTION *IN LIMINE*
TO ADMIT SOCIAL MEDIA POSTS**

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Everett Witherell and Timothy M. Stengel, Assistant United States Attorneys for the District, hereby moves to admit certain social media posts as intrinsic to the offenses charged. In the alternative, and only to the extent the social media posts are deemed extrinsic to the charged offenses, the government also moves to admit the social media posts under Federal Rule of Evidence 404(b).[1]

Throughout the course of the investigation the government has acquired a vast amount of social media attributable to the defendants charged in the Indictment. The amount of social media posted by the defendants in this case is enormous and has previously been provided to defense counsel throughout the pendency of this case. In addition, the government is forwarding to the Court and defense counsel a copy of the specific social media posts that the government intends to use at trial.[2] The social media posts at issue fall into one (or both) of two categories.

---

[1] The government hereby formally notifies the defendants that it intends to introduce at trial, as necessary, evidence of all other crimes, wrongs, and acts set forth in the discovery materials made available to the defendants in this case and/or made available to the government in reciprocal discovery. The introduction of additional Rule 404(b) evidence will depend on the theories, arguments, and evidence elicited by the defendants at trial.

[2] The government has attempted to set forth with particularity the evidence that it seeks to introduce. The government respectfully request that it be permitted to supplement this motion with additional requests if the government comes to believe during the course of its trial preparation that such additional evidence would be useful to the jury in its determination of a fact at issue, or should the government newly learn of such additional evidence. The social media on the disk accompanying this motion are the images/ videos only. The business records provided

First, the government will seek to admit rap videos posted to, among others, Instagram, in which defendant Abdul West, a recording artist and the leader of the drug trafficking organization charged in this case, communicated threats of violence, and which demonstrate West's power and authority within the drug trafficking organization.  Second, the government will also seek to admit social media posts documenting their drug trafficking activities, including posts which discuss drug trafficking, show members of the conspiracy inside various drug houses identified in the Indictment, and detail trips taken by members of the drug trafficking organization for the purpose of importing narcotics into the Philadelphia area.  Both types of social media posts are admissible because they are intrinsic to the offenses charged in that they directly prove the charges and that they facilitated the conduct giving rise to the charges in this case.  Alternatively, and to the extent the social media posts could even be considered "bad acts," they are also admissible under Rule 404(b).

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 17, 2018, a federal grand jury returned a six-count Superseding Indictment charging nine defendants with crimes related to a drug trafficking organization through which the defendants distributed large amounts of narcotics.  The trial in this matter is scheduled for September 23, 2019.

The government alleges that from at least March 2017 through June 2018, the defendants operated, and conspired to operate, a drug trafficking organization known as the Original Block Hustlers or "OBH" for the purpose of selling cocaine, crack, methamphetamine, and heroin.  As part of the conspiracy, they imported drugs from the Los Angeles area and then sold those drugs from various locations they controlled, particularly in and around North Philadelphia.  The

---

in discovery contain additional information such as the IP addresses associated with the posts, the date and time of the posts, location of the posts, email addresses and names associated with the posts, and additional information.

defendants used violence and threats of violence to control their territories, and those threats were often communicated through rap lyrics performed by defendant Abdul West and posted to social media. The defendants also (and perhaps unintentionally) documented their drug trafficking activities through social media posts.

## II. ARGUMENT

The government is seeking to admit social media posts falling into two categories: (1) rap videos posted to, among others, Instagram, in which defendant Abdul West communicated threats of violence, and which demonstrate West's power and authority within OBH; and (2) social media posts documenting the drug trafficking activities of the members of OBH.

### A. The Social Media Posts Are Intrinsic to the Charged Offenses

To the extent the social media posts the government will seek to admit could even be considered prior "bad acts," such evidence is intrinsic to the charged offenses, and therefore, they may be admitted outside of any Rule 404(b) analysis. In *United States v. Green*, the Third Circuit made clear that the "intrinsic" label is reserved "for two narrow categories of evidence." 617 F.3d 233, 248 (3d Cir. 2010). "First [and importantly here], evidence is intrinsic if it 'directly proves' the charged offense." *Id.* (citations omitted). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Id.* at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000))

As part of the conspiracy charged in this case, the defendants are accused of using threats and violence to facilitate their drug trafficking. Indeed, this use of threats and violence is specifically pled in the indictment. Social media posts which communicate threats of violence by members of OBH therefore fall within both categories of intrinsic evidence, as set forth in

*Green*.  As example of such a post, after defendant Dontez Stewart murdered a rival of OBH (Robert Johnson), West bragged in a rap video posted to social media that he sent "Taz to take his head."  "Taz" is Dontez Stewart's street name.  Notably, the lyrics to the rap video were found on one of West's phones seized during the course of the investigation, and was dated October 18, 2017, four day after the murder of Robert Johnson.

This is damning evidence, and it directly proves that West – and in turn, OBH – utilized threats and violence to maintain their drug trade.  The defendants cannot claim that West's raps were part of any performance or persona either.  In them, he identified specific and actual acts of violence, including murders, and related those acts of violence to OBH.  Even if the indictment contained no allegations of threats or violence, West's rap videos would still be intrinsic to the charge offenses because they specifically facilitated the commission of the crimes charged in the indictment in that they conveyed threats to anyone who might challenge OBH's drug trafficking operation.

Additionally, after law enforcement executed a search warrant at a stash house operated by OBH, during which they seized ten kilograms of cocaine and arrested one of the members of the drug trafficking organization (Hoover), West posted a rap video to the social media site Instagram.  In that Instagram video, posted just four days after law enforcements execution of the search warrant, West complains that law enforcement "took 10 of 'em," a reference to the ten kilograms of cocaine seized.  West further states "Quarter million loss, got a broke heart. And they snatched my dog that's the worst part.  One rat destroy everything you work for.  I pray to god that he don't tell them who he work for." This is clearly a reference to the arrest and possible cooperation of defendant Hoover who was arrested at the time of the seizure. West's raps were

not just performances; they are direct evidence of West's association with other members of the drug trafficking organization, his involvement in the charged crimes, and are admissions of guilt.

The government will also seek to admit other posts, attributably to various members of the drug trafficking organization, which directly prove the alleged criminal conduct in this case. All of social media that the government seeks to introduce were posted during the time of the charged conspiracy and provide direct evidence of narcotics trafficking and show members of the conspiracy inside various drug houses identified in the Indictment during the conspiracy. These posts document the drug trafficking activities of members of OBH throughout the conspiracy and are direct evidence of the crimes charged in the Indictment. As an example, the government will prove at trial that defendants Jamaal Blanding, Jameel Hickson, and Richard Chase Hoover traveled several times to the Los Angeles-area to obtain and then ship back to Philadelphia kilogram quantities of narcotics. Blanding documented these trips on Instagram, often with obscure references to the purpose of their trips such as, "I'll make it snow in LA," a clear reference to the cocaine he was there to obtain. By way of further example, another of Blanding's posts shows him eating at a famous West Coast fast food restaurant at a time the government alleges that he was in Los Angeles obtaining narcotics. To the extent these posts can even be called "bad acts," they directly prove the government's allegations and are therefore intrinsic to the charged offenses.

    **B.**    **In the Alternative, the Proffered Evidence is Admissible Under Rule 404(b)**

        **1.**    **Rule 404(b)**

Even if these social media posts somehow fell outside the two categories of intrinsic evidence identified by the Third Circuit, they would still be admissible under Rule 404(b). Rule 404(b) provides, in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b).

Where evidence of *extrinsic* wrongful acts are introduced, a court engages in a four-part test, established by the Supreme Court in *Huddleston v. United States*, 485 U.S. 681 (1988), to determine whether such evidence is admissible under Rule 404(b). Specifically, to be admissible: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003) (citing *Huddleston*, 485 U.S. at 691-92).

While "Rule 404(b) is a rule of exclusion, [in] that it excludes evidence unless the proponent can demonstrate its admissibility, [] it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted*,*" *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). Indeed, Rule 404(b) has long been recognized as a rule of inclusion. *See, e.g.*, *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994); *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988). Relevant evidence is admissible under Rule 404(b) "so long as it was not introduced *solely* to prove criminal propensity. If [the proponent can] identify *any* non-propensity purpose for introducing the evidence, it [is] admissible." *Green*, 617 F.3d at 244 (emphasis in original).

Consistent with the rule from *Huddleston*, all evidence, 404(b) or not, must pass muster under Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of one or more of the

8

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 "creates a presumption of admissibility." *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014).

"Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *United States v. Repak*, 852 F.3d 230, 246 (3d Cir. 2017) (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)). Additionally, "prejudice" does not mean simply that the evidence is harmful to the defendant's case.

Consistent with the decisions cited above favoring the admission of other bad acts evidence for any clearly articulated non-propensity purpose, the standard for appellate review of these determinations is highly deferential. "Trial court rulings under Rule 404(b) are reviewed for an abuse of discretion and may be reversed only when they are 'clearly contrary to reason and not justified by the evidence.'" *United States v. Balter*, 91 F.3d 427, 437 (3d Cir. 1996) (*quoting United States v. Bethancourt*, 65 F.3d 1074, 1079 (3d Cir. 1995)). Similarly, a district court's ruling under Rule 403 may be reversed only if it is "arbitrary or irrational." *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc) (*quoting In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997)). "If judicial self-restraint is ever desirable, it is when a [Federal] Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Universal Rehabilitation Services*, 205 F.3d at 665

### 2. Application of Rule 404(b) to this Case

To the extent the social media rap videos which will be offered by the government do not directly prove the allegations in the indictment, they certainly show West's knowledge of the

9

events surrounding OBH, as well as the relationships among the parties. In a conspiracy case such as this, 404(b) evidence may be introduced to provide necessary background information, to show an ongoing relationship, and to help the jury understand the parties' role in the scheme. *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982). West's acknowledgment of the violent acts of his coconspirators demonstrates that he was aware of the acts and that the violence was often done at his behest, for the benefit of OBH. The defendants may attempt at trial to distance themselves from each other; West's words will appropriately draw them back together. Similarly, social media posts documenting the drug trafficking activities of OBH – such as Blanding's social media posts described above – show knowledge of those activities and the relationship of the parties.

Given this proper purpose, social media post communicating threats or detailing events related to OBH are plainly relevant. Moreover, the evidence is highly probative. Although some of West's rap lyrics carry with them a heightened risk of prejudice, courts have permitted such evidence to be admitted where done so with a proper relevant purpose. *See United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (holding that rap video was properly admitted under Rule 403 to show defendant's animosity toward rival gang and association with co-conspirators); *United States v. Moore*, 639 F.3d 443, 447–48 (8th Cir. 2011) (The recordings constituted evidence of prior bad acts, they were nonetheless admissible under Rule 404(b). Moore maintained that he was not involved in a drug conspiracy, and he testified that he never bought or sold crack cocaine or cocaine. The recordings were relevant to prove that he knew cocaine prices, used drug code words, and sold drugs to supplement his income.); *United States v. Stuckey*, 253 F. App'x 468, 482 (6th Cir. 2007) ("Stuckey's lyrics concerned killing government witnesses and specifically referred to shooting snitches, wrapping them in blankets, and dumping

10

their bodies in the street—precisely what the Government accused Stuckey of doing to Darbins in this case. Therefore, the district court did not abuse its discretion by holding that the lyrics were relevant."); *United States v. Norwood*, No. 12-CR-20287, 2015 WL 2343970, at *11 (E.D. Mich. May 14, 2015), aff'd in part sub nom. *United States v. Gills*, 702 F. App'x 367 (6th Cir. 2017), as amended (Nov. 6, 2017).

Moreover, Federal Rule of Evidence 403 favors the admission of the proffered evidence. That rule does not direct simple "balancing."  The rule makes clear that exclusion is allowed only if the prejudicial impact of evidence "substantially outweighs" the probative value.  In part, this means that the test is almost surely not met where, as here, the probative value of the evidence is itself very high.  The remedy of exclusion is "extraordinary," and should be applied sparingly; the balance should be struck in favor of admissibility. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990); accord, *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) (quoted favorably by the Third Circuit in *Johnson*, 199 F.3d at 128); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978).

"[T]he prejudice against which [Rule 403] guards is unfair prejudice — prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009), quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002). "Virtually all evidence is prejudicial or it is not material." *Carter*, 617 F.2d at 972 n.14, quoting *Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977).

The evidence proffered here does not produce unfair prejudice.  It simply uses the defendants' own social media posts to prove the conduct of which they are accused.  To the extent the evidence is inflammatory, a jury instruction will ameliorate any prejudice, and as the

Third Circuit has often held, a properly instructed jury may surely be trusted to consider the evidence only for the proper purposes for which it is admitted. *See, e.g.*, *Brunson*, 516 Fed. Appx. at 157-58 (admission of evidence of subsequent completed armed robbery in trial of three previous armed robberies not unfairly prejudicial).  The model Third Circuit jury instruction for this purpose, Third Circuit Model Jury Instructions-Criminal § 4.29, was approved by the Court in *United States v. Lee*, 612 F.3d 170, 191-92 & 191 n.25 (3d Cir. 2010), should therefore be presented here.

   For all these reasons, the Court should grant the government's motion and admit in evidence at trial social media posts communicating threats and documenting the defendants' drug trafficking activities.

              Respectfully Submitted,

              WILLIAM M. McSWAIN
              United States Attorney

              /s Everett Witherell
              EVERETT WITHERELL
              TIMOTHY M. STENGEL
              Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's motion *in limine* to admit social media evidence has been served by me, this date, by electronic filing on all counsel of record.

                                              s/ Everett Witherell
                                              Everett Witherell
                                              Assistant United States Attorney

Dated: August 9, 2019