IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  18-249 |
| v. | : | DATE FILED: |
| ABDUL IBRAHIM WEST, | : | VIOLATIONS: |
| a/k/a "Assault Rifle Ab," | | |
| a/k/a "AR-Ab," | : | 21 U.S.C. § 846, 841(a)(1), (b)(1)(A) |
| a/k/a "El Patron," | | (conspiracy to distribute 50 grams or |
| a/k/a "the Goon," | : | more of methamphetamine, 5 kilograms |
| JAMAAL BLANDING, | | or more of cocaine, 280 grams or more of |
| a/k/a "Khaz," | : | crack, and 100 grams or more of heroin – |
| a/k/a "Bionickhaz," | | 1 count) |
| a/k/a "Deangelo Smith," | : | 21 U.S.C. § 841(a)(1) (distribution of a |
| JAMEEL HICKSON | | controlled substance – 7 counts) |
| a/k/a "Meliano," | : | 21 U.S.C. § 841(a)(1) (possession with |
| a/k/a "OG," | | intent to distribute a controlled substance |
| RICHARD CHASE HOOVER, | : | – 4 counts) |
| a/k/a "Boog," | | 18 U.S.C. § 924(c) (possession of a firearm |
| DONTEZ STEWART | : | in furtherance of a drug trafficking |
| a/k/a "Taz," | | offense – 1 count) |
| AMIR BOYER | : | 18 U.S.C. § 922(g)(1) (possession of a |
| a/k/a "Mulla," | | firearm by a felon – 3 counts) |
| DARYL BAKER | : | 21 U.S.C. § 2 (aiding and abetting) |
| a/k/a "Shotti," | | Notice of forfeiture |
| HANS GADSON | : | |
| a/k/a "No Brakes Bras," | | |
| DENNIS HARMON | : | |

SECOND SUPERSEDING INDICTMENT

COUNT ONE

THE GRAND JURY CHARGES THAT:

1.      From on or about March 22, 2017, through on or about June 12, 2018, in

Philadelphia, in the Eastern District of Pennsylvania, defendants

ABDUL IBRAHIM WEST,

a/k/a "Assault Rifle Ab,"
a/k/a "AR-Ab,"
a/k/a "El Patron,"
a/k/a "the Goon,"
**JAMAAL BLANDING,**
a/k/a "Khaz,"
a/k/a "Bionickhaz,"
a/k/a "Deangelo Smith,"
**JAMEEL HICKSON,**
a/k/a "Meliano,"
a/k/a "OG,"
**RICHARD CHASE HOOVER,**
a/k/a "Boog,"
**DONTEZ STEWART,**
a/k/a "Taz,"
**AMIR BOYER,**
a/k/a "Mulla,"
**DARYL BAKER,**
a/k/a "Shotti," and
**HANS GADSON,**
a/k/a "NoBrakes Bras,"

conspired and agreed, together with others known and unknown to the grand jury, to knowingly

and intentionally distribute controlled substances, that is, 5 kilograms or more of a mixture and

substance containing a detectable amount of cocaine, a Schedule II controlled substance, 280

grams or more of a mixture and substance containing a detectable amount of cocaine base

("crack"), a Schedule II controlled substance, and 50 grams or more of methamphetamine

(actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Section

841(a)(1), (b)(1)(A), and 100 grams or more of a mixture and substance containing a detectable

amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code,

Section 841(a)(1), (b)(1)(B).

<u>**MANNER AND MEANS**</u>

It was a part of that conspiracy that:

1.     Defendants ABDUL WEST, JAMAAL BLANDING, JAMEEL

2

HICKSON, RICHARD CHASE HOOVER, DONTEZ STEWART, AMIR BOYER, DARYL

BAKER, and HANS GADSON, coordinated with each other, and with others known and

unknown to the grand jury (hereinafter, this group, a Drug Trafficking Organization, will be

referred to collectively as "the DTO"), to obtain distribution quantities, that is, multi-kilogram

quantities, of various controlled substances, including methamphetamine and cocaine, from

sources of supply located in California and elsewhere.  At all times, defendant WEST was the

leader of the DTO.

      2.     Defendant ABDUL WEST owned and/or maintained properties in

Philadelphia, Pennsylvania within which he and the DTO could gather to coordinate drug

trafficking and manage their drug trafficking operation, including 3234 N. Sydenham Street,

Philadelphia (also known as "the Mansion"), and 2900 N. Taylor Street, Philadelphia (also

known as "the Lounge").  Defendant WEST and other members of the DTO maintained

properties within which they could gather to coordinate drug trafficking and manage their drug

trafficking operation, including 2323 Race Street, Philadelphia, and 250 N. Christopher

Columbus Boulevard, Philadelphia.  Members of the DTO used false identifications to rent

apartments at 2323 Race Street, and 250 N. Christopher Columbus Boulevard to prevent

investigation into their backgrounds and prevent detection by law enforcement.

      3.     Defendants WEST, HICKSON, and BLANDING would coordinate the

delivery of various controlled substances from sources of supply in Los Angeles, California to

Philadelphia.  Defendants HICKSON and BLANDING carried money for payment and

arranged for the purchase of distribution quantities of controlled substances on trips between

Philadelphia and Los Angeles.

      4.     Defendants HICKSON and BLANDING traveled via air to and from the

Philadelphia International Airport to the Los Angeles International Airport to arrange for shipments of controlled substances for themselves and other members of the DTO, to negotiate price and to pay for shipments of controlled substances with the source of supply in California.

5.      Defendant HOOVER drove his Volvo truck tractor from Philadelphia to Los Angeles, California where he would coordinate with defendants HICKSON and BLANDING to collect distribution quantities of controlled substances and US Currency and drive it back from Los Angeles to Philadelphia.

6.      Defendants WEST, HICKSON, BLANDING, BOYER, GADSON, and BAKER coordinated the arrival of the controlled substances with HOOVER and each other to arrange for the controlled substances to be broken down into street-level distribution quantities at properties controlled by members of the DTO, including the Mansion, 2323 Race Street, and 250 North Columbus Boulevard.

7.      Members of the DTO pooled their money together to pay for the controlled substances and operational expenses, and subsequently shared in the proceeds of drug trafficking.

8.      When shipments of controlled substances from Los Angeles included cocaine, some members of the DTO would cook a portion of the cocaine to create distribution quantities of cocaine base ("crack").

9.      Defendant WEST established roles and responsibilities for members of the DTO, including assigning certain narcotics trafficking streams to various "lieutenants," who included defendants BLANDING, BAKER and BOYER.

10.      Defendants WEST, BLANDING, STEWART, BAKER, BOYER, and GADSON, as well as others known and unknown to the grand jury, distributed the controlled

4

substances both in and around the Philadelphia area.  Members of the DTO broke down
kilogram quantities into smaller quantities to sell to their individual customers. They sometimes
sold distribution amounts between themselves when one of their individual customers wanted
something one member of the group did not have but which another member of the group did
have.

11.    Defendants HARMON and HOOVER as well as other members of the
DTO were responsible for staying with and protecting the controlled substance supplies kept at
the various residences owned and maintained by WEST and other members of the DTO.

12.    Members of the DTO kept firearms with them and at the various DTO
residences to intimidate those with whom they dealt, and to protect their drug stashes and the
profits derived therefrom from others who may attempt to rob them.

13.    Defendants WEST, BOYER and GADSON and other members of the
DTO wrote, produced and distributed songs via the Internet and social media which lyrics
reflected their drug trafficking activities and threats of violence to others to protect and maintain
their drug trafficking activities and prevent witnesses from cooperating with law enforcement.

14.    Defendants WEST and other members of the DTO recruited lower, street-
level drug distributors, known and unknown to the grand jury, to distribute controlled
substances throughout Philadelphia and the surrounding area, and return the proceeds to
members of the DTO.

15.    Members of the DTO used their cellular telephones to coordinate with
each other and those outside the DTO to acquire, transport, and distribute controlled substances
throughout Philadelphia and the surrounding area.

16.    The individual hereafter identified as "Buyer 1," whose identity is known

to the grand jury, was a Confidential Informant working with the Federal Bureau of Investigation posing as a private citizen interested in purchasing narcotics.

17.     The individual hereafter identified as "Buyer 2," whose identity is known to the grand jury, was a Confidential Informant working with the Federal Bureau of Investigation posing as a private citizen interested in purchasing narcotics.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants ABDUL WEST, JAMAAL BLANDING, JAMEEL HICKSON, RICHARD CHASE HOOVER, DONTEZ STEWART, AMIR BOYER, DARYL BAKER, and HANS GADSON, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     On or about March 22, 2017, members of the DTO rented Apartment 219 at Edgewater Apartments at 2323 Race Street using a false identification in the name of "Tabitha Bishop" for the purpose of conducting drug trafficking activities in a high-end apartment building, to protect their narcotics and prevent detection by law enforcement.

2.     On or about May 1, 2017, in Philadelphia, Pennsylvania, an undercover law enforcement officer (UC) met with defendant DONTEZ STEWART in the area of 2000 Bridge Street, Philadelphia, who introduced himself as "Taz". STEWART sold the UC two vials of cocaine base ("crack") in exchange for $20 US currency and gave the UC the telephone number XXX-XXX-3893 as a number where he could be reached.

On or about June 6, 2017, in Philadelphia, Pennsylvania:

3.     Buyer 1 placed a call to defendant STEWART on telephone number XXX-XXX-3893 to arrange for the purchase of cocaine base ("crack").

6

4.      Buyer 1 traveled to 5200 Torresdale Avenue to meet defendant STEWART and discuss the arrangements for the purchase of a quarter ounce of cocaine base ("crack").

5.      Defendant STEWART then drove to and entered the Mansion, where defendant ABDUL WEST was also present.  Defendant STEWART returned to Buyer 1, where STEWART provided approximately 6.278 grams cocaine base ("crack") in exchange for $340 US currency.

On or about June 22, 2017, Philadelphia, Pennsylvania:

6.      Buyer 1 placed a call to defendant STEWART on telephone number XXX-XXX-3893 to arrange for the purchase of cocaine base ("crack").

7.      Buyer 1 met defendant STEWART on the 5200 block of Torresdale Avenue where Buyer 1 showed defendant STEWART $1,200 US currency for the purchase of cocaine base ("crack").  STEWART returned the money to Buyer 1 and left to obtain the cocaine base ("crack").

8.      Defendant ABDUL WEST drove from the Mansion to the area near 444 North 3rd Street, Philadelphia, where he provided defendant STEWART with cocaine base "crack" to sell to Buyer 1.

9.      Defendant STEWART returned to Buyer 1 and sold Buyer 1 approximately 24 grams of cocaine base ("crack") in exchange for $1,200 US currency.

On or about August 17, 2017, Philadelphia, Pennsylvania:

10.     Buyer 1 placed a call to defendant STEWART on Telephone number XXX-XXX-3893 to arrange for the purchase of cocaine base ("crack").

11.     Buyer 1 met defendant STEWART in the vicinity of 6391 Oxford Avenue

7

where Buyer 1 gave Defendant Stewart $ 1,800 US currency for the purchase of cocaine base ("crack").

12.     Defendant STEWART then drove to and entered the Mansion, where defendant ABDUL WEST was also present.  Defendant STEWART returned to Buyer 1, where Stewart provided approximately 33.9 grams cocaine base ("crack") to Buyer 1.

13.     On or about September 3, 2017, defendant JAMAAL BLANDING coordinated picking up money for narcotics at the Mansion from defendant HANS GADSON.

14.     On or about September 10, 2017, defendants JAMAAL BLANDING and HANS GADSON used their cellular telephones to coordinate a drug transaction.

15.     On or about September 10, 2017, defendants JAMAAL BLANDING and ABDUL WEST coordinated defendant WEST collecting narcotics and/or US currency for payment of narcotics from a stored location at the Mansion.

16.     On or about September 11, 2017, defendants ABDUL WEST, JAMAAL BLANDING, JAMEEL HICKSON, RICHARD HOOVER, DONTEZ STEWART, AMIR BOYER, HANS GADSON, DARYL BAKER, and DENNIS HARMON maintained a stash house at the Mansion which included $8,101 US currency, a .45 caliber firearm, and possessed with intent to distribute approximately 62 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), approximately 229 grams of a mixture and substance containing a detectable amount of heroin, and approximately 48 grams of a mixture and substance containing a detectable amount of methamphetamine.

17.     On or about September 11, 2017, defendant DARYL BAKER possessed with intent to distribute approximately 169 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), and approximately 371 grams of a mixture and

substance containing a detectible amount of cocaine. These narcotics were recovered in a vehicle outside of the Mansion.

18.     On or about September 12, 2017, defendant JAMAAL BLANDING used his cellular telephone to update defendant AMIR BOYER and other members of the DTO regarding the status of the Mansion that had been searched by law enforcement on September 11, 2017.  Defendant HOOVER went to the Mansion and used his cellular telephone to communicate with defendant BLANDING about the status of the drugs and currency that had been stored at the Mansion.

19.     On or about September 28, 2017, defendant BLANDING coordinated the collection of narcotics and/or US currency for payment of narcotics from defendant JAMEEL HICKSON at 1 Brown Street, Philadelphia, and then coordinated with defendant AMIR BOYER to meet defendant BLANDING on his return.

On or about October 19, 2017, in Philadelphia, Pennsylvania:

20.     Buyer 1 contacted defendant STEWART by phone calls and text messages to his telephone number XXX-XXX-3893 to arrange for the sale of cocaine base ("crack"), methamphetamine, and a firearm.

21.     Buyer 1 met defendant STEWART at the Dunkin Donuts at 6391 Oxford Avenue, Philadelphia, where STEWART provided Buyer 1 with approximately 6.8 grams of crystal methamphetamine in exchange for $200 US currency.

22.     Later that afternoon, STEWART again met with Buyer 1 at the Dunkin Donuts at 6391 Oxford Avenue, Philadelphia, where defendant STEWART sold Buyer 1 approximately 31.3 grams of a mixture and substance containing cocaine base ("crack") and a .25 caliber Phoenix Arms Model HP25A firearm bearing serial number 4400590 in exchange for

$1,450 US currency for the cocaine base ("crack") and $450 US currency for the firearm.

      23.    On or about October 21, 2017, defendants WEST and BLANDING communicated via cellular telephone to discuss the quantity, quality and sources of the drugs used in their drug trafficking.

      24.    On or about October 31, 2017, defendant BLANDING coordinated by cellular telephone to bring US currency for narcotics trafficking to defendant WEST at the Lounge.

      25.    On or about November 2, 2017, defendant HOOVER drove his Volvo truck tractor from Philadelphia headed west toward Los Angeles, California.

      26.    On or about November 9, 2017, defendant BLANDING uses his cellular telephone to request an amount of narcotics from defendant WEST, who agrees to provide it to him that day.

      27.    On or about November 12, 2017, defendant HICKSON traveled from Philadelphia International Airport to Los Angeles International Airport.

      28.    On or about November 14, 2017, defendant BLANDING traveled from Philadelphia International Airport to Los Angeles, where he was met by defendant HICKSON. Defendant BLANDING also sent a message to defendant HOOVER advising defendant HOOVER of defendant BLANDING's travel arrangements and making arrangements to meet.

      29.    On or about November 15, 2017, defendant HOOVER, HICKSON and BLANDING used their cellular telephones to coordinate meeting while in Los Angeles. Defendant BLANDING also contacted defendant BAKER to inform defendant BAKER that defendants BLANDING, HICKSON, and HOOVER are in Los Angeles.

      30.    On or about November 16, 2017, defendant HOOVER departed the Los

Angeles area with narcotics in his Volvo truck tractor for himself and members of the DTO. Defendant BLANDING communicated by telephone with defendant ABDUL WEST to coordinate delivery of packages of narcotics from Los Angeles, California to Philadelphia.

31.     On or about November 20, 2017, defendant HOOVER returned in his Volvo truck tractor to Philadelphia, Pennsylvania, where he unloaded narcotics from his Volvo truck tractor into his Chevrolet Trailblazer SUV and proceeded to deliver them to JAMEEL HICKSON at 1 Brown Street, Philadelphia.

32.     On or about November 21, 2017, defendant HANS GADSON used his cellular telephone to communicate with defendant ABDUL WEST about the status of their drug trafficking on that date.

33.     On or about November 27, 2017, defendants GADSON and WEST used their cellular telephones to discuss the status of their drug trafficking on that date.

34.     On or about November 29, 2017, defendants WEST and BAKER discussed the status of their current and future planned drug trafficking activities and DTO operations.

35.     On or about November 30, 2017, defendant WEST used his cellular telephone to communicate with defendant GADSON to direct defendant GADSON to 2323 Race Street, Philadelphia for drug trafficking activities.

36.     On or about December 1, 2017, defendants BLANDING and BAKER had a telephone conversation to discuss their current and future planned drug trafficking activities and DTO operations.

37.     On or about December 5, 2017, defendants WEST and BAKER had a telephone conversation to arrange drug trafficking on that date with other members of the DTO.

11

38.   On or about December 6, 2017, defendants WEST, BAKER, and GADSON had a telephone conversation to discuss drug trafficking.

39.   On or about December 7, 2017, defendants BLANDING and BAKER had a telephone conversation to discuss future drug trafficking activities in California with other members of the DTO.

40.   On or about December 8, 2017, defendants BLANDING and BOYER communicated via cellular telephone about payment of rent for the apartment in the name of "Tabitha Bishop."

41.   On or about December 12, 2017, defendant HOOVER left Philadelphia in his Volvo truck tractor headed west toward Los Angeles, California, where he arrived on December 15, 2017.

42.   On or about December 16, 2017, defendants HICKSON and BLANDING communicated with each other via cellular telephone before they departed from Philadelphia International Airport and arrived at Los Angeles International Airport.  Defendants HICKSON and BLANDING communicated with each other again to coordinate upon arrival in Los Angeles.

43.   On or about December 16, 2017, defendant BLANDING communicated with defendant BAKER to discuss defendant BLANDING's activities in Los Angeles with other members of the DTO.

44.   On or about December 17, 2017, defendants WEST, BLANDING, HOOVER, and BOYER coordinated with each other via cellular telephone to pool money to purchase narcotics.

45.   On or about December 18, 2017, defendants WEST and BAKER had a

12

telephone conversation to discuss drug trafficking.

46.     On or about December 19, 2017, defendants BLANDING and HICKSON coordinated drug trafficking activities via their cellular telephones while in Los Angeles.

47.     On or about December 20, 2017, defendants WEST and BLANDING used their cellular telephones to communicate about getting a sample of drugs to test the quality from a source in New York.

48.     On or about December 21, 2017, defendants BLANDING and HICKSON arranged to meet at the Lounge.

49.     On or about December 22, 2017, defendant HOOVER returned to Philadelphia in his Volvo truck tractor and unloaded narcotics into his Chevrolet Trailblazer, which he then drove to 2323 Race Street, Philadelphia.  Defendant HOOVER delivered the narcotics to defendant WEST at 2323 Race Street.

50.     On or about December 23, 2017 through January 18, 2018, in Philadelphia, Pennsylvania, defendant WEST, using cellular telephone XXX-XXX-1686, coordinated sales of cocaine base ("crack") with defendant GADSON, using cellular telephone XXX-XXX-6579, including communicating drug amounts remaining and picking up narcotics from 2323 Race Street.

51.     On or about December 28, 2017, defendants WEST and BAKER had a telephone conversation to discuss drug trafficking and DTO operations.

52.     On or about January 1, 2018, defendants WEST and BAKER had a telephone conversation to discuss drug trafficking, DTO operations, and the roles of members of the DTO.

53.     On or about January 4, 2018, defendants WEST and BLANDING used

13

their cellular telephones to coordinate members of the DTO bringing drugs from 2323 Race Street and delivery of drugs to DTO customers.

54.     On or about January 6, 2018, defendants WEST and BAKER had a telephone conversation to discuss drug trafficking, DTO operations, and the roles of members of the DTO.

55.     On or about January 8, 2018, defendant WEST communicated with defendant HOOVER that defendant HOOVER can move into the apartment at 2323 Race Street and can get the key to the apartment from defendant BOYER.

56.     On or about January 10, 2018, defendant WEST communicated with defendant HOOVER that defendant HOOVER should return the key to the apartment at 2323 Race Street to defendant BOYER when defendant HOOVER goes out of town.

57.     On or about January 19, 2018, defendant HOOVER left Philadelphia in his Volvo truck tractor headed west toward Los Angeles, California.

58.     On or about January 24, 2018, defendants BLANDING and HICKSON traveled on a flight together from Philadelphia International Airport to Los Angeles International Airport.  Defendant BLANDING communicated with defendant HOOVER when defendant BLANDING and HICKSON arrived in Los Angeles, and defendant BLANDING coordinated with defendant HOOVER to meet with defendant BLANDING and HICKSON.

59.     On or about January 25, 2018, defendants BLANDING, HICKSON, and HOOVER coordinated transportation and traveled together while in Los Angeles, and stored US currency in their rental car used in Los Angeles.  Defendants BLANDING and HICKSON coordinated collecting narcotics for the DTO using their cellular telephones.

60.     On or about January 26, 2018, defendants BLANDING, HICKSON and

14

HOOVER stored narcotics and/or US Currency in their hotel room and transported narcotics in a rental car in Los Angeles. Defendants BLANDING and HICKSON communicated via cellular telephone to ensure that the packages of narcotics and/or US Currency are hidden from hotel housekeeping to prevent detection.

61.     On or about January 27, 2018, defendant BLANDING and HICKSON used their cellular telephones to coordinate meetings.

62.     On or about January 28, 2018, defendants BLANDING and HICKSON returned to Philadelphia.

63.     On or about January 31, 2018, defendant HOOVER returned to Philadelphia in his Volvo truck tractor and unloaded narcotics into his Chevrolet Trailblazer, which he then drove to 2323 Race Street, Philadelphia. Defendant HOOVER delivered the narcotics to defendant WEST at 2323 Race Street, where defendants GADSON and BAKER were awaiting the delivery.

64.     On or about January 31, 2018, defendant GADSON used his cellular telephone to communicate with defendant WEST about travelling to 2323 Race Street.

65.     On or about February 2, 2018, defendant HICKSON used his cellular telephone to inform defendants WEST and BLANDING that narcotics arrived in Philadelphia on that date.

66.     On or about February 2, 2018, defendants HOOVER and BLANDING used their cellular telephones to communicate about paying defendant HOOVER for delivering narcotics.

67.     On or about February 3, 2018, defendant GADSON communicated with defendant WEST about the status of their drug trafficking.

68.     On or about February 4, 2018, defendants BLANDING and HICKSON met at the apartment at 2323 Race Street.

69.     On or about February 5, 2018, defendants WEST and GADSON communicated via their cellular telephones about the status of their drug trafficking activities as well as securing and storing narcotics at the Mansion.

70.     On or about February 6, 2018, defendants HOOVER and BLANDING coordinated payment of rent at the apartment at 2323 Race Street.

71.     On or about February 7, 2018, defendant BLANDING used his cellular telephone to advise defendants WEST, HICKSON, and BOYER on how to delete data from their cellular telephones to prevent detection by law enforcement.

72.     On or about February 10, 2018, defendant WEST used his cellular telephone to request that defendant BLANDING provide him with the keys to 2323 Race Street left by defendant HOOVER.

73.     On or about February 15, 2018, defendants BLANDING and HICKSON communicated using their cellular telephones about payment for and/or proceeds of drug trafficking.

74.     On or about February 16, 2018, defendants WEST and GADSON communicated using their cellular telephones about their drug trafficking activities.

75.     On or about February 20, 2018, defendant HOOVER left Philadelphia in his Volvo truck tractor headed west toward Los Angeles, California.  Defendant HOOVER communicated with defendant WEST about the location where defendant HOOVER stores his Volvo truck tractor.

76.     On or about February 23, 2018, defendants BLANDING and HICKSON

16

traveled from Philadelphia International Airport to Los Angeles International Airport, and then traveled to Las Vegas, Nevada.

77.     On or about February 25, 2018, defendants BLANDING, HICKSON and HOOVER met together in Los Angeles, California.

78.     On or about February 25, 2018, defendant HICKSON used his cellular telephone to communicate with defendants WEST and BOYER about drug trafficking opportunities in California.

79.     On or about February 26, 2018, defendants WEST and BLANDING used their cellular telephones to arrange to ship a package via FEDEX from Los Angeles to the Philadelphia, Pennsylvania area.

80.     On or about February 27, 2018, defendants BLANDING and HICKSON used their cellular telephones to communicate about drug trafficking and a source of supply to the DTO in New York.

81.     On or about February 28, 2018, defendants BLANDING, HICKSON and HOOVER used their cellular telephones to communicate with one another about paying for narcotics in Los Angeles.

82.     On or about February 28, 2018, defendants BLANDING and HICKSON used their cellular telephones to communicate about meeting at defendant HICKSON's residence.

83.     On or about March 1, 2018, defendants BLANDING and HICKSON used their cellular telephone to coordinate future drug trafficking activities in California and the status of their current drug trafficking.

84.     On or about March 3, 2018, defendant BLANDING used his cellular

17

telephone to send defendant HICKSON information on a FEDEX package and a UPS package sent from Los Angeles to the Philadelphia area while defendants BLANDING and HICKSON were in Los Angeles.

85.     On or about March 4, 2018, defendant HOOVER returned to Philadelphia in his Volvo truck tractor and contacted defendant HICKSON on cellular telephone XXX-XXX-8500. After defendant HOOVER had parked his Volvo truck tractor, defendants BLANDING and WEST met defendant HOOVER at the Volvo truck tractor with defendant HOOVER's Chevrolet Trailblazer. Defendant HOOVER transferred narcotics from the Volvo truck tractor into the Chevrolet Trailblazer and, along with defendants WEST and BLANDING, traveled to 2323 Race Street.  Defendant HOOVER then delivered the narcotics to defendants WEST and BLANDING at 2323 Race Street.  Defendant GADSON arrived at 2323 Race Street shortly thereafter.

86.     On or about March 4, 2018, defendants WEST and BLANDING used their cellular telephones to coordinate picking defendant HOOVER up at the location where defendant HOOVER's Volvo truck tractor arrived.

87.     On or about March 6, 2018, defendant BOYER communicated with management at 2323 Race Street that he is subletting Apartment 219.

88.     On or about March 8, 2018, defendant HICKSON traveled to the Dominican Republic.

89.     On or about March 9, 2018, defendant HICKSON used his cellular telephone to communicate with defendant BLANDING about sending money to defendant HICKSON in the Dominican Republic via Western Union.

90.     On or about March 10, 2018, defendants WEST, BLANDING and

18

HICKSON used their cellular telephones to coordinate payment to defendant HOOVER for his transportation work.

91.     On or about March 14, 2018, defendants WEST and BAKER used their cellular telephones to discuss drug trafficking activities, the quality of their product, and DTO operations.

92.     On or about March 17, 2018, defendants BLANDING and HICKSON used their cellular telephones to coordinate their next trip to Los Angeles, California.

93.     On or about March 17, 2018, defendants WEST and GADSON used their cellular telephones to coordinate drug sales to customers, to supply other members of the DTO, and to meet at 2323 Race Street.

94.     On or about March 25, 2018, defendants BLANDING and GADSON used their cellular telephones to coordinate a drug transaction at the Lounge.

95.     On or about March 27, 2018, defendant HOOVER left Philadelphia in his Volvo truck tractor headed west toward Los Angeles, California.

96.     On or about March 30, 2018, defendants BLANDING and HICKSON traveled from Philadelphia to Las Vegas, Nevada, and then on to Los Angeles, California.

97.     On or about March 30, 2018, defendant BOYER used his cellular telephone to communicate with defendant BLANDING about money and an apartment key for 2323 Race Street.

98.     On or about March 31, 2018, defendant WEST used his cellular telephone to communicate with defendant BLANDING about drug trafficking activity in Los Angeles.

99.     On or about April 1, 2018, defendants BLANDING and HICKSON used their cellular telephones to communicate about drug trafficking activities in Los Angeles.

19

100.    On or about April 1, 2018, defendants BLANDING and GADSON used their cellular telephones to communicate about defendant BLANDING providing drugs for defendant GADSON to sell when defendant BLANDING returns from Los Angeles.

101.    On or about April 2, 2018, defendants BLANDING and HICKSON used their cellular telephones to communicate with each other about contacting their drug source in Los Angeles and methods of shipping narcotics from Los Angeles to Philadelphia.

102.    On or about April 9, 2018, defendant HOOVER returned to Philadelphia in his Volvo truck tractor.  Defendants WEST and BLANDING drove to meet defendant HOOVER at the location of his Volvo truck tractor, where defendant HOOVER transferred narcotics from the Volvo truck tractor into WEST's vehicle.  Defendants WEST, BLANDING, and HOOVER then traveled to 2323 Race Street, where the narcotics were unloaded from WEST's car and brought into 2323 Race Street.

103.    On or about April 11, 2018, defendant WEST used his cellular telephone to communicate with defendants BLANDING, BAKER, and BOYER about staying in their respective roles that defendant WEST established for them in the DTO, and forbidding them from getting drugs directly from defendant HICKSON.

104.    On or about April 13, 2018, defendants WEST, BLANDING, and HOOVER used their cellular telephones to coordinate renting an apartment at One Water Street, Philadelphia, payment for which would be made through defendant HICKSON.  Defendant WEST provided bank account information to defendant BLANDING to pay for the new apartment.

105.    On or about April 14, 2018, defendant WEST used his cellular telephone to coordinate payment of a deposit for an apartment at One Water Street with defendant

BLANDING and HOOVER to associates of defendant HICKSON.  Defendant HOOVER

provided information to WEST and BLANDING confirming defendant HOOVER's payment for

the apartment, and communicated to defendant WEST that defendant HOOVER had provided

the key to 2323 Race Street to defendant BOYER.

106.   On or about April 15, 2018, defendant GADSON used his cellular

telephone coordinate getting cocaine base ("crack") from defendant BLANDING at the Lounge.

107.   On or about April 17, 2018, defendants BLANDING and GADSON

coordinate providing methamphetamine to a customer of the DTO.

108.   On or about April 20, 2018, defendants HOOVER and BLANDING used

their cellular telephones to coordinate defendant HOOVER picking up the keys to the apartment

at One Water Street.

109.   On or about April 23, 2018, defendant WEST used his cellular telephone

to provide a customer of the DTO the contact information for defendant BAKER to complete the

sale of narcotics.

110.   On or about April 27, 2018, defendant HOOVER used his cellular

telephone to provide bank account information for rental of the One Water Street Apartment to

defendant BLANDING.  Defendant BLANDING then used his cellular telephone to provide

payment confirmation to defendant HICKSON.

111.   On or about April 30, 2018, defendants WEST and BLANDING used

their cellular telephones to communicate about a bag of money from defendant HICKSON that

was intended for WEST.

112.   On or about May 1, 2018, defendant BLANDING used his cellular

telephone to request that defendant HOOVER get defendant BLANDING some money and meet

at the Lounge.

113. On or about May 2, 2018, defendant HOOVER took possession of the keys to Apartment 717 of the One Water Street Apartments, 250 N. Christopher Columbus Boulevard, in Philadelphia. Members of the DTO had rented this apartment using the false identification of "Deangelo Smith" for the purpose of conducting drug trafficking activities in a manner to protect their narcotics and prevent detection by law enforcement.

114. On or about May 3, 2018, defendant BLANDING used his cellular telephone to request that defendant HOOVER make a copy of the key to the One Water Street apartment.

115. On or about May 3, 2018, defendant WEST used his cellular telephone to provide the contact information for defendant BAKER to a customer of the DTO to arrange for a drug transaction.

116. On or about May 4, 2018, defendant HOOVER left Philadelphia in his Volvo truck tractor headed west toward Los Angeles, California.

117. On or about May 5, 2018, defendants HICKSON and BLANDING communicated about defendant HICKSON's source for providing defendant BLANDING with a false identification in the name of DEANGELO SMITH, the name that was used by the DTO to rent the apartment at One Water Street.

118. On or about May 9, 2018, defendants BLANDING and HICKSON traveled from Philadelphia to Los Angeles, California.

119. On or about May 10, 2018, defendants BLANDING, HICKSON, and HOOVER met together in Los Angeles.

120. On or about May 11, 2018, defendant HOOVER met with defendant

22

HICKSON, loaded concealed narcotics into his Volvo truck tractor, and proceeded to travel east back to Philadelphia, Pennsylvania.

121.    On or about May 16, 2018, defendant BLANDING used his cellular telephone to contact defendant HOOVER who was driving back to Philadelphia to inform defendant HOOVER that defendants BLANDING and HICKSON were together and to contact defendant HICKSON.

122.    On or about May 16, 2018, defendants WEST and HICKSON communicated through their cellular telephones about them meeting with a source of supply on the following Saturday.

123.    On or about May 16, 2018, defendant HOOVER returned to Philadelphia in his Volvo truck tractor.  Defendant HOOVER then transferred concealed narcotics and US currency from the Volvo truck tractor into his Chevrolet Trailblazer, and drove to 250 N. Christopher Columbus Boulevard.  Defendant BLANDING met defendant HOOVER at 250 N. Christopher Columbus Boulevard, and using a key, defendant BLANDING opened the door to Apartment 717 to admit himself and defendant HOOVER who was transporting approximately 10,004 grams of cocaine, 2,671 grams of methamphetamine, and $20,000 in US currency.

124.    On or about May 17, 2018, defendants BLANDING and HICKSON used their cellular telephones to coordinate meeting with defendant HOOVER in the morning.

125.    On or about May 17, 2018, defendant BLANDING learned that law enforcement had seized the drugs stored at One Water Street and contacted defendants WEST, HICKSON, and BOYER.

126.    On or about May 17, 2018, defendant HICKSON traveled to the Dominican Republic.

23

127.     On or about May 20, 2018, defendant HICKSON used his cellular telephone to communicate with defendant WEST about the drug seizure from One Water Street.

128.     On or about May 21, 2018, defendant HICKSON used his cellular telephone to communicate with defendant BLANDING about the drug seizure from One Water Street.

129.     On or about June 12, 2018 defendant HICKSON traveled from Philadelphia International Airport to Los Angeles, California.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 1, 2017, in Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania, defendant

**DONTEZ STEWART,**
**a/k/a "Taz,"**

knowingly and intentionally distributed a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

25

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 6, 2017, in Philadelphia, Pennsylvania, in the Eastern District of

Pennsylvania, defendant

### DONTEZ STEWART,
### a/k/a "Taz,"

knowingly and intentionally distributed a mixture and substance containing a detectable amount

of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

26

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 22, 2017, in Philadelphia, Pennsylvania, in the Eastern District

of Pennsylvania, defendants

**ABDUL IBRAHIM WEST,**
**a/k/a "Assault Rifle Ab,"**
**a/k/a "AR-Ab,"**
**a/k/a "El Patron,"**
**a/k/a "the Goon," and**
**DONTEZ STEWART,**
**a/k/a "Taz,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, a mixture and

substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled

substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

27

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      On or about August 17, 2017, in Philadelphia, Pennsylvania, in the Eastern

District of Pennsylvania, defendant

**ABDUL IBRAHIM WEST,**
**a/k/a "Assault Rifle Ab,"**
**a/k/a "AR-Ab,"**
**a/k/a "El Patron,"**
**a/k/a "the Goon," and**
**DONTEZ STEWART,**
**a/k/a "Taz,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, 28 grams or

more, that is, approximately 33.9 grams of a mixture and substance containing a detectable

amount of cocaine base ("crack"), a Schedule II controlled substance.

2.      It is further alleged that before defendant ABDUL WEST committed the offense

charged in this count, defendant WEST was convicted in the Commonwealth of Pennsylvania of

the crime of manufacture/deliver/possession with intent to manufacture or deliver of a controlled

substance, in violation of 35 P.S. § 780-113 §§ A30, a serious drug felony, and was sentenced to

3 to 6 years' incarceration, for which he served more than 12 months of imprisonment and for

which he was released from serving any term of imprisonment related to that offense within 15

years of the commencement of the instant offense.

        In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and

Title 18, United States Code, Section 2.

28

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      On or about September 11, 2017, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**ABDUL IBRAHIM WEST,**
**a/k/a "Assault Rifle Ab,"**
**a/k/a "AR-Ab,"**
**a/k/a "El Patron,"**
**a/k/a "the Goon,"**
**JAMAAL BLANDING,**
**a/k/a "Khaz,"**
**a/k/a "Bionickhaz,"**
**a/k/a "Deangelo Smith,"**
**JAMEEL HICKSON,**
**a/k/a "Meliano,"**
**a/k/a "OG,"**
**RICHARD CHASE HOOVER,**
**a/k/a "Boog,"**
**AMIR BOYER,**
**a/k/a "Mulla,"**
**DARYL BAKER,**
**a/k/a "Shotti,"**
**HANS GADSON,**
**a/k/a "NoBrakes Bras," and**
**DENNIS HARMON,**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute, of 28 grams or more, that is, approximately 62 grams, of a

mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance, 100 grams or more, that is, approximately 229 grams, of a mixture and

substance containing a detectable amount of heroin, a Schedule I controlled substance, and

approximately 48 grams of a mixture and substance containing a detectable amount of

methamphetamine, a Schedule II controlled substance.

2.      It is further alleged that before defendant ABDUL WEST committed the offense charged in this count, defendant WEST was convicted in the Commonwealth of Pennsylvania of the crime of manufacture/deliver/possession with intent to manufacture or deliver of a controlled substance, in violation of 35 P.S. § 780-113 §§ A30, a serious drug felony, and was sentenced to 3 to 6 years' incarceration, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

3.      It is further alleged that before defendant JAMAAL BLANDING committed the offense charged in this count, defendant BLANDING was convicted in the Commonwealth of Pennsylvania of the crime of manufacture/deliver/possession with intent to manufacture or deliver a controlled substance, in violation of 35 P.S. § 780-113 §§ A30, a serious drug felony, and sentenced to 2 to 4 years' incarceration, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 11, 2017, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### DARYL BAKER,
**a/k/a "Shotti,"**

knowingly and intentionally possessed with intent to distribute 28 grams or more, that is,

approximately 169 grams, of a mixture and substance containing a detectable amount of cocaine

base ("crack"), a Schedule II controlled substance, and mixture and substance containing a

detectible amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B),

(b)(1)(C).

31

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 19, 2017, in Philadelphia, Pennsylvania, in the Eastern

District of Pennsylvania, defendant

**DONTEZ STEWART,**
**a/k/a "Taz,"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 6.8 grams of

methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

32

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 19, 2017, in Philadelphia, Pennsylvania, in the Eastern

District of Pennsylvania, defendant

**DONTEZ STEWART,**
**a/k/a "Taz,"**

knowingly and intentionally distributed 28 grams or more, that is, approximately 31.3 grams of

cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 19, 2017, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### DONTEZ STEWART,
**a/k/a "Taz,"**

knowing he had previously been convicted in a court of the Commonwealth of Pennsylvania of a

crime punishable by imprisonment for a term exceeding one year, knowingly possessed a

firearm, that is, a .25 caliber Phoenix Arms Model HP25A, bearing serial number 4400590, and

that firearm was in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     On or about December 13, 2017, in Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania, defendants

**JAMAAL BLANDING,**
**a/k/a "Khaz,"**
**a/k/a "Bionickhaz,"**
**a/k/a "Deangelo Smith,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, 50 grams or more, that is, approximately 53.82 grams, of methamphetamine, a Schedule II controlled substance.

2.     It is further alleged that before defendant JAMAAL BLANDING committed the offense charged in this count, defendant BLANDING was convicted in the Commonwealth of Pennsylvania of the crime of manufacture/deliver/possession with intent to manufacture or deliver of a controlled substance, in violation of 35 P.S. § 780-113 §§ A30,  a serious drug felony, and was sentenced to 2 to 4 years' incarceration, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     On or about May 17, 2018, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**ABDUL IBRAHIM WEST,**
**a/k/a "Assault Rifle Ab,"**
**a/k/a "AR-Ab,"**
**a/k/a "El Patron,"**
**a/k/a "the Goon,"**
**JAMAAL BLANDING,**
**a/k/a "Khaz,"**
**a/k/a "Bionickhaz,"**
**a/k/a "Deangelo Smith,"**
**JAMEEL HICKSON,**
**a/k/a "Meliano,"**
**a/k/a "OG," and**
**RICHARD CHASE HOOVER,**
**a/k/a "Boog,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute, 5 kilograms or more, that is, approximately 10,004 grams, of

a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled

substance, and 50 grams or more, that is, approximately 2,671 grams, of methamphetamine, a

Schedule II controlled substance.

2.     It is further alleged that before defendant ABDUL WEST committed the offense

charged in this count, defendant WEST was convicted in the Commonwealth of Pennsylvania of

the crime of manufacture/deliver/possession with intent to manufacture or deliver of a controlled

substance, in violation of 35 P.S. § 780-113 §§ A30, a serious drug felony, and was sentenced to

3 to 6 years' incarceration, for which he served more than 12 months of imprisonment and for

which he was released from serving any term of imprisonment related to that offense within 15

years of the commencement of the instant offense.

3.      It is further alleged that before defendant JAMAAL BLANDING committed the offense charged in this count, defendant BLANDING was convicted in the Commonwealth of Pennsylvania of the crime of manufacture/deliver/possession with intent to manufacture or deliver of a controlled substance, in of violation of 35 P.S. § 780-113 §§ A30, a serious drug felony, and was sentenced to 2 to 4 years' incarceration, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2018, in Philadelphia, Pennsylvania, in the Eastern

District of Pennsylvania, defendant

**AMIR BOYER,**
**a/k/a "Mulla,"**

knowingly and intentionally possessed with intent to distribute for remuneration a mixture and

substance containing a detectable amount of marihuana, a Schedule I controlled.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(D).

38

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2018, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**AMIR BOYER,**
**a/k/a "Mulla,"**

knowing he had previously been convicted in a court of the Commonwealth of Pennsylvania of a

crime punishable by imprisonment for a term exceeding one year, knowingly possessed a

firearm, that is, a 9mm SCCY Model CPX-1, bearing serial number 516369, loaded with eight

live rounds of ammunition, and that firearm was in and affecting interstate and foreign

commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2018, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**AMIR BOYER,**
**a/k/a "Mulla,"**

knowingly possessed a firearm in furtherance of a drug trafficking crime for which he may be

prosecuted in a court of the United States, that is, possession with intent to distribute a controlled

substance in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count

Thirteen of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2018, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**DARYL BAKER,**
**a/k/a "Shotti,"**

knowing he had previously been convicted in a court of the Commonwealth of Pennsylvania of a

crime punishable by imprisonment for a term exceeding one year, knowingly possessed a

firearm, that is, a 9mm Master piece Arms model MPA30, bearing serial number F23222, and

that firearm was in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

**NOTICE OF FORFEITURE No. 1**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 21, United States Code, Sections

841(a)(1), 846 set forth in this indictment, defendants

**ABDUL IBRAHIM WEST,**
a/k/a **"Assault Rifle Ab,"**
a/k/a **"AR-Ab,"**
a/k/a **"El Patron,"**
a/k/a **"the Goon,"**
**JAMAAL BLANDING,**
a/k/a **"Khaz,"**
a/k/a **"Bionickhaz,"**
a/k/a **"Deangelo Smith,"**
**JAMEEL HICKSON,**
a/k/a **"Meliano,"**
a/k/a **"OG,"**
**RICHARD CHASE HOOVER,**
a/k/a **"Boog,"**
**DONTEZ STEWART,**
a/k/a **"Taz,"**
**AMIR BOYER,**
a/k/a **"Mulla,"**
**DARYL BAKER,**
a/k/a **"Shotti,"**
**HANS GADSON,**
a/k/a **"NoBrakes Bras,"** and
**DENNIS HARMON,**

shall forfeit to the United States of America:

      (a)     any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such violation(s), including, but not limited to:

     i.     Volvo truck tractor registered to TEAM TRANSPORTATION (VIN: 4V4NC9EJ1CN558888) and trailer;

     ii.     Chevrolet Trailblazer registered to RICHARD CHASE HOOVER (VIN: 1GNDT33S392133562);

     iii.     The real property located at 3234 Sydenham Street, Philadelphia, PA;

     iv.     Dodge Durango, VIN 1C4RDJAG2JC101652;

42

      v.  Jeep Grand Cherokee, VIN 1C4RJFAG9EC479172.

   (b)  any property constituting, or derived from, proceeds obtained,

directly or indirectly, from the commission of such violations, including, but not limited to:

      i.  $8,101 seized on September 11, 2017;

      ii.  $20,000 seized on May 17, 2018;

      iii.  $11,000 seized on June 4, 2018; and

      iv.  $10,793 seized on October 18, 2018.

   2.  If any of the property subject to forfeiture, as a result of any act or

omission of the defendant(s):

   (a)  cannot be located upon the exercise of due diligence;

   (b)  has been transferred or sold to, or deposited with, a third party;

   (c)  has been placed beyond the jurisdiction of the Court;

   (d)  has been substantially diminished in value; or

   (e)  has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant(s) up to the value of the property subject to

forfeiture.

   All pursuant to Title 21, United States Code, Section 853.

## NOTICE OF FORFEITURE No. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violation of Title 18, United States Code, Section 922(g) and 924 (c) set forth in this indictment, defendants

**DONTEZ STEWART,**
a/k/a "Taz,"
**AMIR BOYER,**
a/k/a "Mulla," and
**DARYL BAKER,**
a/k/a "Shotti,"

shall forfeit to the United States of America all firearms and ammunition involved in the commission of such violation(s), including, but not limited to:

1. One (1) .25 caliber Phoenix Arms Model HP25A firearm bearing serial number 4400590.

2. One (1) 9mm SCCY Model CPX-1 firearm bearing serial number 516369.

3. One (1) 9mm Masterpiece Arms model MPA30 bearing serial number F23222.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 924(d).

**A TRUE BILL:**

_____

**FOREPERSON**

_____

**WILLIAM M. McSWAIN**
**United States Attorney**

45

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 924(d).

**A TRUE BILL:**

_____

**FOREPERSON**

for **WILLIAM M. McSWAIN**
**United States Attorney**

45