# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 18-249** |
| **RICHARD CHASE HOOVER et al.** | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, Everett Witherell and Timothy Stengel, Assistant United States Attorneys for the district, respectfully submits this response to defendant Dontez Stewart's pretrial motion in limine to exclude evidence of the of the murder of Robert Johnson.   For the reasons set forth below, the motion should be denied.

From at least March 2017 through June 2018, the defendants in this case operated a drug trafficking organization ("DTO") selling cocaine, crack, methamphetamine, and heroin out of their various controlled locations, particularly in and around North Philadelphia. The defendants and their associates are known by Philadelphia Police to control the area of 18th and Tioga in North Philadelphia, distributing poison to their community that is besieged by drugs and associated gun violence.

These defendants used threats and violence to assert control over the DTO's drug territory, intimidate rival drug dealers, promote its reputation for violence, and further its drug trafficking activities. Threats and violence are part of the manner and means of this drug trafficking group, and such evidence provides significant proof regarding the existence of the cons piracy, relationships among co-conspirators, and means by which members of the group

trafficked drugs and continued to control drug trafficking activities within the group's territory.

Following a September 11, 2017, fatal shooting of Sherman Williams that took place on North 22nd Street, Philadelphia Police were looking for a Jeep Grand Cherokee registered to an address on the 3200 block of North Sydenham Street.  Officers discovered the jeep, which belonged to Abdul West, on that block along with what turned out to be a stash and packaging house owned by West and used by the DTO, which they refer to as "the Mansion". [1]

Law enforcement continued their investigation, which included controlled buys of crack, methamphetamine, and a firearm from DTO member Dontez Stewart, who was supplied crack directly from Abdul West.

As a result of controlled buys and surveillance, law enforcement was able to follow the pattern of their drug supply coming from Los Angeles, California to Philadelphia. On May 17, 2018, a search warrant was executed in a high-end apartment controlled by members of the DTO, which had acquired it through the use of a false identity. Out of that apartment law enforcement seized 10 kilograms of cocaine, nearly 6 pounds of pure methamphetamine, and $20,000 in cash.

### I.      The Murder of Robert Johnson on October 14, 2017

On October 14, 2017, Robert Johnson was shot multiple times on the 4000 block of Benner Street.  Johnson was transported to the hospital where he died as a result of his wounds. Five days later, as charged in Counts 8, 9, and 10 of the Second Superseding Indictment, on October 19, 2017, defendant Dontez Stewart met with a confidential informant ("CI") and sold

---

[1] The members of the DTO are members of or are associates of local gang Original Block Hustlers/Hustlaz ("OBH") and Goonie Gang, which also operates as a designation for their music recording.  The term "block hustlers" is a reference to street-level drug traffickers which, like the members of this DTO, maintain control of drug trafficking on specific blocks that they control.

the CI a quantity of methamphetamine, crack cocaine, and a firearm.  The sale was audio

recorded.  During the controlled purchase, Stewart told the CI that the crack cocaine came from

Abdul West.  When the CI inquired about purchasing a 9mm firearm, that Stewart had showed

the CI on a prior occasion, Stewart stated that he could not sell the CI that particular firearm

because he had recently used the "9" to deliver "14 rounds to the chest around Frankford and

Benner four night ago, maybe five nights ago."  Additionally, Stewart told the CI that the

methamphetamine he just sold him was "off a nigga I smoked." At the time of his murder,

Robert Johnson, was living at 2323 Race Street in Philadelphia.  After Stewart killed Johnson,

OBH members began to use Johnson's residence as an OBH stash house.

On November 3, 2017, Stewart was arrested with a 9mm handgun at 2139 Granite Street.

Subsequent ballistics testing on the bullets removed from Johnson's body, as well as the fired

cartridge casings at the crime scene, revealed that the handgun in Stewart's possession was the

same gun used to kill Johnson.  Stewart was subsequently charged with the murder of Johnson

and is currently on trial for that homicide.

West subsequently wrote a rap video to post on social media - the lyrics to that posting

were found on one of West's phones seized during the course of the investigation, and was dated

October 18, 2017, four days after the murder of Robert Johnson.[2]  In those lyrics, West

specifically identified "Tez" or Dontez Stewart, and described Stewart committing a murder on

West's behalf.  West also described other acts and threats of violence by his associates and how

he made money selling drugs.  These threats promoted OBH's reputation for violence and helped

further the drug trafficking activities by scaring off rival drug dealers.  Specifically, those lyrics

_____

[2] This video has been provided in discovery and accompanied the government's motion in limine to admit social media posts (Doc 352).

were as follows:

> I'm Purple hearted I done been to war if u kill 1 of mine I kill 10 of urs Ring ur
> bell den I riot pump thru door Den I try stomp ur fucking head thru da floor Told
> my brother if u spit on him get brutal wit him My only problem is deciding what
> shooter to send It's dat da same war u using again Don't give uh fuck if dead u
> shoot again I watched Instagram I Seen what u said homie Now Ima fill ur whole
> page with ur dead homies I'll have da whole city scared stand near homie **I call
> Tez and tell him bring dat nigga head to me** He on the gram murder I was no
> good Now I declare Marshall law on ur whole hood I heard ur corney Mixtape
> did it good wood My plug just thru on da look It's never uh opp only love hurt
> me Can't wait to skeem touch cause he blood thirsty If I give em an address he
> uh come early Den he open up ur head like it was sugar We don't value life if u
> ain't on da team Our last Homicide it was on da screen Get uh nigga touched so
> he hit quarantine Stab em with both hands like wolverines Made my first 50
> grand back in 08 Whole plate of snow flakes on proba Hold wait it's no bake just
> go straight And fuck da city Get U banned from da whole state

(emphasis added).

During the course of the investigation, law enforcement identified other members of the

DTO who were transporting large quantities of narcotics from California to the Philadelphia area

via commercial truck.  Additionally, law enforcement identified several apartments in the

Philadelphia area that DTO was storing narcotics after trips to and from the west coast. After the

murder of Johnson, the DTO began utilizing Johnson's apartment located at 2323 Race Street to

coordinate drug trafficking and manage their drug trafficking operation.  Law enforcement

identified four trips, conducted by the DTO, in which they are believed to have brought narcotics

from California to the Race Street residence.  These trips occurred in December 2017, January

2018, March 2018, and April 2018.

### III.     Evidence Regarding the Murder of Robert Johnson is Intrinsic to the Crimes Charged

Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged offense.[3] Evidence that is "intrinsic" does not fall within the rule. *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).  In *Green*, the Court explained that the "intrinsic" label is reserved "for two narrow categories of evidence." *Id.* at 248. "First, evidence is intrinsic if it 'directly proves' the charged offense." *Id.* (citations omitted). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Id.* at 249 (*quoting United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "[A]ll else must be analyzed under Rule 404(b)." *Green*, 617 F.3d at 249.[4]

In this regard, it is appropriate to consider the Court's decision in *United States v. Gibbs*, 190 F.3d 188 (3d Cir. 1999), which approved the admission of evidence as intrinsic (and which *Green* cited as an example of such a result). Gibbs was one of the leaders of a cocaine

---

[3]  The rule provides:
(b) Crimes, Wrongs, or Other Acts.
(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>    (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>    (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

[4] Even if the Court determines that certain evidence is not intrinsic, and that Rule 404(b) is applicable, the evidence is nonetheless admissible pursuant to 404(b).  To this extent, the government relies upon Rule 404(b) to support admission of this evidence.

distribution conspiracy. When Gibbs suspected that a person aimed to kidnap him, he dispatched two aides to attempt to kill that person. On another occasion, when Gibbs believed that an erstwhile co-conspirator, Sydnor, shot him, he delegated two other workers to kill Sydnor. The government introduced evidence of both these violent acts.  The Third Circuit approved the admission of the evidence as intrinsic, not subject to Rule 404(b), because the indictment in the case alleged that Gibbs and others used acts of violence to protect his position as the leader of the conspiracy. *Id.* at 216. "Since the government introduced evidence of Gibbs's use of violence to further the illegal objectives of the cocaine conspiracy by removing threats to himself (since threats to Gibbs meant threats to the trafficking enterprise), the District Court did not abuse its discretion in permitting this evidence to come in." *Id.* at 218.

In the instant case, the Second Superseding Indictment alleges the following as part of the manner and means of the charged conspiracy:

- Defendant ABDUL WEST owned and/or maintained properties in Philadelphia, Pennsylvania within which he and the DTO could gather to coordinate drug trafficking and manage their drug trafficking operation, including 3234 N. Sydenham Street, Philadelphia (also known as "the Mansion"), and 2900 N. Taylor Street, Philadelphia (also known as "the Lounge").  Defendant WEST and other members of the DTO maintained properties within which they could gather to coordinate drug trafficking and manage their drug trafficking operation, including 2323 Race Street, Philadelphia, and 250 N. Christopher Columbus Boulevard, Philadelphia.  Members of the DTO used false identifications to rent apartments at 2323 Race Street, and 250 N. Christopher Columbus Boulevard to prevent investigation into their backgrounds and prevent detection by law enforcement. (Count 1, Manner and Means, para. 2).

- Members of the DTO kept firearms with them and at the various DTO residences to intimidate those with whom they dealt, and to protect their drug stashes and the profits derived therefrom from others who may attempt to rob them. (Count 1, Manner and Means, para. 12).

- Defendants WEST, BOYER and GADSON and other members of the DTO wrote, produced and distributed songs via the Internet and social media which lyrics reflected their drug trafficking activities and threats of violence to others to protect and maintain their drug trafficking activities and prevent witnesses from cooperating with law

enforcement. (Count 1, Manner and Means, para. 13).

Title 21, United States Code, Section 846 does not require that the government allege or prove an overt act in order to prove a violation of the statute. There are a variety of facts alleged in Count One of the Second Superseding Indictment; there are also a variety of facts that were not alleged in the indictment, but which prove the conspiracy.  This additional evidence relates directly to the conspiracy, and is admissible despite the fact that it is not specifically discussed in the indictment. *See Gibbs*, 190 F.3d at 217 (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged); *United States v. Thai*, 29 F.3d 785, 812-13 (2d Cir. 1994) ("It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy . . . An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather it is part of the very act charged.") (internal quotations and citations omitted).  In *United States v. Cross*, 308 F.3d 308 (3d Cir. 2002), the Third Circuit explained that "acts are intrinsic when they directly prove the charged [crime]."

As part of the conspiracy charged in this case, the defendants are accused of using threats and violence to facilitate their drug trafficking.  Indeed, this use of threats and violence is specifically pled in the indictment.  The murder Robert Johnson and the related social media posts communicate threats of violence by members of OBH and therefore fall within both categories of intrinsic evidence, as set forth in *Green*.   Even if the indictment contained no allegations of threats or violence, social media posts would still be intrinsic to the charge offenses because they specifically facilitated the commission of the crimes charged in the

indictment in that they conveyed threats to anyone who might challenge OBH's drug trafficking operation.

Additionally, Dontez Stewart's statements to the CI regarding the shooting of Robert Johnson, the 9mm firearm, and the narcotics are direct evidence of the crimes charged in the indictment.   On October 19, 2017, Stewart sold a crack cocaine, methamphetamine, and a firearm to the CI. Stewart explained that the crack cocaine came from co-defendant Abdul West but the methamphetamine was taken from Robert Johnson after his murder.  Indeed, Stewart informed the CI that he could not sell him the 9mm requested by the CI because Stewart had used it to kill Johnson just a few days prior.

Further, the murder of Robert Johnson directly facilitated the crimes charged in the indictment.   As the indictment alleges, and the evidence will show, the defendants maintained properties within which they could gather to coordinate drug trafficking and manage their drug trafficking operation, including 2323 Race Street, the residence occupied by Robert Johnson prior to this death.   After the murder of Robert Johnson, the DTO continued to utilize the residence in the furtherance of the drug conspiracy.  Indeed, only after the murder of Johnson did members of the DTO deliver narcotics from the west coast to that location and used the residence to store and coordinate the sale of narcotics.

Courts have found that evidence related to threats, violence, and even murders is directly relevant to drug trafficking charges, recognizing that violent drug trafficking groups, like the one here in this case, often use threats and violence to further their drug trafficking activities. See *Gibbs*, 190 F.3d at 217 (finding that district court did not abuse its discretion in permitting the introduction of evidence of uncharged acts of violence, which furthered a cocaine conspiracy); *United States v. Jones*, 566 F.3d 353, 365 n.5 (3d Cir. 2009) (holding that evidence of shootings

was relevant to the charged conspiracy because they "tended to show the gang's hierarchal structure and expectations that lower-ranking members, . . . carry out the violent acts of retaliation, including murder, against other gangs to ensure one's position within the [gang], solidify its violent reputation, and protect its drug-distribution territory from rival gangs, among other things"); *see also United States v. Baker*, 432 F.3d 1189, 1209 (11th Cir. 2005) (evidence of murder was admissible in drug conspiracy involving members of violent drug trafficking group); *United States v. Davis*, 402 F.Supp.2d 252, 261-62 (D.D.C. 2005) (evidence that defendant committed murder was admissible in drug conspiracy prosecution even though defendant had been acquitted of murder); *United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) (evidence of murder committed by co-conspirator with drug conspiracy leader's permission because he believed that victim stole a drug dealer's drugs was admissible in drug conspiracy); *United States v. Estrada*, 320 F.3d 173, 183 (2d Cir. 2003) (holding that "use of violence to secure the organization's drug turf [and] carrying and using firearms to enforce its control over the drug market" are overt acts of narcotics conspiracy); *United States v. Grimmond,* 137 F.3d 823, 831-32 (4th Cir. 1998) (evidence of defendant's involvement in two shootings was intrinsic evidence of drug charges); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (concluding that evidence of numerous killings was admissible as direct evidence of narcotics conspiracy and enterprise); *United States v. McCullah*, 76 F.3d 1087, 1104 (10th Cir. 1996) (permissible for jury to find that defendants "understood that the murder . . . was not an end in itself but rather was part of the . . . organization's larger drug distribution operation"); *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996) (holding that statements about contract murder made during drug deal were intrinsic to drug conspiracy); *United States v. Baker*, 855 F.2d 1353,

1358 (8th Cir. 1988) (evidence of murder by defendants in drug conspiracy prosecution admissible where it occurred during course of conspiracy).

Even if these acts of violence somehow fell outside the two categories of intrinsic evidence identified by the Third Circuit, they would still be admissible under Rule 404(b).  Rule 404(b) provides, in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b).

Where evidence of *extrinsic* wrongful acts are introduced, a court engages in a four-part test, established by the Supreme Court in *Huddleston v. United States*, 485 U.S. 681 (1988), to determine whether such evidence is admissible under Rule 404(b).  Specifically, to be admissible: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003) (citing *Huddleston*, 485 U.S. at 691-92).

While "Rule 404(b) is a rule of exclusion, [in] that it excludes evidence unless the proponent can demonstrate its admissibility, it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted*," United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).  Indeed, Rule 404(b) has long been recognized as a rule of inclusion. *See, e.g.*, *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994); *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988).  Relevant evidence is admissible under Rule 404(b) "so long as it was

not introduced *solely* to prove criminal propensity.  If [the proponent can] identify *any* non-propensity purpose for introducing the evidence, it [is] admissible."  *Green*, 617 F.3d at 244 (emphasis in original).

Consistent with the rule from *Huddleston*, all evidence, 404(b) or not, must pass muster under Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Rule 403 "creates a presumption of admissibility." *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014).

"Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *United States v. Repak*, 852 F.3d 230, 246 (3d Cir. 2017) (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)). Additionally, "prejudice" does not mean simply that the evidence is harmful to the defendant's case.

Consistent with the decisions cited above favoring the admission of other bad acts evidence for any clearly articulated non-propensity purpose, the standard for appellate review of these determinations is highly deferential. "Trial court rulings under Rule 404(b) are reviewed for an abuse of discretion and may be reversed only when they are 'clearly contrary to reason and not justified by the evidence.'" *United States v. Balter*, 91 F.3d 427, 437 (3d Cir. 1996) (*quoting United States v. Bethancourt*, 65 F.3d 1074, 1079 (3d Cir. 1995)). Similarly, a district court's ruling under Rule 403 may be reversed only if it is "arbitrary or irrational." *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc)

(*quoting In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997)). "If judicial self-restraint is ever desirable, it is when a [Federal] Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Universal Rehabilitation Services*, 205 F.3d at 665.

To the extent that the homicide and related social media posts which will be offered by the government do not directly prove the allegations the indictment, they certainly show the pertinent background of the offenses, establish the relationship among the offenders, and complete the narrative of events surrounding the charged crimes. In a conspiracy case such as this, 404(b) evidence may be introduced to provide necessary background information, to show an ongoing relationship, and to help the jury understand the parties' role in the scheme. *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982).

This evidence does not only directly prove the crimes charged in Counts 1, 8, 9, and 10 of the Second Superseding Indictment but it also provides necessary background and context in the overall drug conspiracy.  *See United States v. Benjamin*, 711 F.3d 371, 380 (3d Cir. 2013) (evidence that the defendant was on parole was necessary and admissible background to explain why a search was conducted and the defendant's actions); *United States v. Shavers*, 693 F.3d 363, 391 (3d Cir. 2012) (evidence regarding the investigation of another robbery was properly admitted to prove relevant facts and provide background information, and the fact that some evidence was relevant only to acquitted counts is irrelevant), sentence vacated on other grounds, 133 S. Ct. 2877 (2013); *United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010) ("allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non propensity purpose under Rule 404(b)."). The proffered testimony shows that West, the leader of the DTO, directing co-conspirator to commit a homicide.  Further, the evidence

shows that the murder furthered the drug conspiracy by allowing Stewart to sell the narcotics that he took from Johnson and allowed the DTO to utilize Johnson residence as a drug house.

Moreover, Federal Rule of Evidence 403 favors the admission of the proffered evidence. That rule does not direct simple "balancing." The rule makes clear that exclusion is allowed only if the prejudicial impact of evidence "substantially outweighs" the probative value. In part, this means that the test is almost surely not met where, as here, the probative value of the evidence is itself very high. The remedy of exclusion is "extraordinary," and should be applied sparingly; the balance should be struck in favor of admissibility. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990); accord, *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) (quoted favorably by the Third Circuit in *Johnson*, 199 F.3d at 128); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978).

"[T]he prejudice against which [Rule 403] guards is unfair prejudice — prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009), quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002). "Virtually all evidence is prejudicial or it is not material." *Carter*, 617 F.2d at 972 n.14, quoting *Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977).

The evidence proffered here does not produce unfair prejudice. While the actions of the defendants in the case are horrific, Rule 403 does not provide a shield for defendants who engage in outrageous acts, "permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002). To the extent the evidence is prejudicial, it is not unfairly so, and a jury instruction will ameliorate any prejudice. Third Circuit has often held, a properly

13

instructed jury may surely be trusted to consider the evidence only for the proper purposes for which it is admitted. *See, e.g.*, *Brunson*, 516 Fed. Appx. at 157-58 (admission of evidence of subsequent completed armed robbery in trial of three previous armed robberies not unfairly prejudicial).  The model Third Circuit jury instruction for this purpose, Third Circuit Model Jury Instructions-Criminal § 4.29, was approved by the Court in *United States v. Lee*, 612 F.3d 170, 191-92 & 191 n.25 (3d Cir. 2010), should therefore be presented here.

For all these reasons, the Court should deny defendants' motions and admit the proffered evidence.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Everett Witherell
Everett Witherell
Timothy Stengel
Assistant United States Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Everett Witherell
Everett Witherell
Assistant United States Attorney

Date: September 19, 2019